GENERATION II ORTHOTICS INC.
and Generation II USA Inc.,
Plaintiffs–Appellants,

v.

MEDICAL TECHNOLOGY INC. (doing
business as Bledsoe Brace Systems),
Defendant–Appellee.

No. 00–1106.

United States Court of Appeals,
Federal Circuit.

Aug. 15, 2001.

Duane H. Mathiowetz, Townsend & Townsend and Crew LLP, of San Francisco, CA, argued for plaintiff-appellant. With him on the brief was K.T. Cherian.

Roy W. Hardin, Locke, Liddell & Sapp, LLP, of Dallas, TX, argued for defendant-appellee. With him on the brief was Eugene C. Vallow. Of counsel was L. Dan Tucker.

Before NEWMAN, LINN, and DYK, Circuit Judges.

LINN, Circuit Judge.

Generation II Orthotics, Inc. and its exclusive licensee, Generation II USA, Inc., appeal the district court's claim construction and resulting judgment of non-infringement of United States Patent Nos. 5,302,169 (" '169 patent") and 5,400,806 (" '806 patent"). *Generation II Orthotics Inc. v. Med. Tech. Inc.*, No. C95–1842C, (W.D.Wash. Oct. 13, 1999). Because the district court erred in its construction of the term "controlled" in a functional statement in a means-plus-function clause, and erred in its application of 35 U.S.C. § 112, paragraph 6 to certain method claims, we vacate the judgment and remand for further proceedings in accordance with this opinion. We affirm the district court's determination that § 112, paragraph 6 does not apply to claim 21 of the '169 patent, but hold that it erred in its construction of the term "controlled."

## BACKGROUND

The plaintiff, Generation II Orthotics, Inc., designs, manufactures, and sells orthopedic braces for the treatment of various knee ailments. Generation II USA, Inc. is the exclusive licensee of Generation II Orthotics. The two companies are collectively referred to hereinafter as Gen II. The president of Generation II Orthotics, Dean Taylor, is the inventor of the patents in suit.

The defendant, Medical Technologies, Inc. ("Med Tech"), also known as Bledsoe Brace Systems, also designs, manufactures, and sells orthopedic braces, including the alleged infringing orthopedic brace known as the Bledsoe Thruster ("Thruster").

### The '169 Patent

The '169 patent is directed to an orthopedic knee brace that can be used as a

post-operative brace after a patient has undergone high tibial osteotomy. The patent discloses the brace itself and methods for applying and adjusting the brace in certain preferred embodiments. The claimed device includes a standard knee brace having two rigid arms joined by a pivotable joint that allows the arms to move with the leg as it bends at the knee.

The '169 patent's improvement over the prior art is the incorporation of an additional joint on each arm that allows "controlled" inclination of the arms relative to the pivotable joint. Figures 1 through 3 of the '169 and '806 patents, shown below, illustrate the various components of one embodiment of the knee brace.

While the device as illustrated in Figure 1 includes straps and other supporting structures, the feature of the device that the claims are directed to is the combination of two arms 18, 22 connected by a pivotable joint 24, and "joint means in the

brace for allowing controlled medial and lateral inclination of each arm relative to the pivotable joint." In the embodiment of Figures 2 and 3, the inclination of each arm is accomplished by an adjustable joint 44. '169 patent, col. 3, ll. 33–36. The adjustable joint 44 is described as having first and second parts 46 and 48, respectively, secured together to "lock them in a predetermined position." '169 patent, col. 3, ll. 38–48.

In another embodiment of the invention, illustrated above in Figures 4 and 5 of the '169 patent, the inclination of each arm is accomplished by "a hinge 64 formed in the pivotable joint [24]." '169 patent, col. 4, ll. 22–23. The hinge 64 includes two parts 70, 72, joined by a threaded hinge pin 74 that "allows setting then locking of the brace in a predetermined position with the arms 18 and 22 at a controlled inclination

to the pivotable joint 24." '169 patent, col. 4, ll. 28–40. In a further embodiment of the invention, illustrated in Figures 6 and 7 of the '169 patent, the inclination of each arm is accomplished by "a combination of the embodiment of FIGS. 2 and 3 and the embodiment of FIGS. 4 and 5 in that there is a joint in each arm, as in FIGS. 2 and 3, but that joint is a hinge, as in FIGS. [ ] 4 and 5." '169 patent, col. 4, ll. 57–60.

In yet another embodiment of the invention, illustrated above in Figures 8 through 10 of the '169 patent, the inclination of each arm is accomplished by "a combination of all the preceding embodiments." '169 patent, col. 4, l. 66. This embodiment includes hinged joints 64 on each arm, but adjustment of the inclination of each arm is achieved by using screws 54, 62, as in the embodiment of FIGS. 2 and 3. The hinge pins 74 of this embodiment need not be threaded.

The first issue we address is the construction of claim 1, which states:

1. In an orthopaedic brace comprising:

a pair of arms to be secured to a wearer's body, a pivotable joint between said arms to allow pivoting of the knee while supporting the knee, the improvement comprising:

*joint means in the brace for allowing controlled medial and lateral inclination of each rigid arm relative to the pivotable joint.*

'169 Reexamination Certificate, col. 1, ll. 25–32 (emphasis added).

The second issue we address is the applicability of 35 U.S.C. § 112, paragraph 6 to claims 16 and 21, which recite:

16. A method of bracing a knee of a patient following high tibial osteotomy comprising:

locating a brace about the knee, said brace having a pair of arms to contact the leg of the patient and a pivotable joint between said arms to allow pivoting of the knee while supporting the knee, *a joint in the brace to allow controlled medial and lateral inclination of each arm relative to a pivotable joint;* and

adjusting the inclination to provide the required bracing at the required inclination.

'169 patent, col. 8, ll. 27–36 (emphasis added).

21. An orthopaedic knee brace for laterally supporting the knee, the brace comprising:

a pivotable joint for allowing pivoting of the knee;

first and second substantially rigid arms attached to the pivotable joint, each support member extending sub-

stantially linearly from the pivotable joint to a location directly above and below the wearer's knee when the brace is worn to laterally support the knee; and

*an adjustable joint coupled to each rigid arm for allowing controlled medial and lateral inclination of each rigid arm relative to the pivotable joint.*

'169 Reexamination Certificate, col. 2, ll. 23–34 (emphasis added).

### The '806 Patent

The '806 patent discloses a post-operative knee brace and method for its use. This patent is a continuation-in-part of the '169 patent, with claims drawn to a method for applying the brace to a patient to relieve unicompartmental osteoarthritis. The only issue we address regarding the '806 patent relates to claim 1, which recites:

1. A method of bracing a knee of a patient to relieve unicompartmental osteoarthritis comprising:

locating a brace about the knee, said brace having a pair of arms to contact the leg of the patient and a pivotable joint between said arms to allow pivoting of the knee while supporting the knee, *a joint in the brace to allow controlled medial and lateral inclination of each arm relative to a pivotable joint;* and adjusting the inclination to provide the required bracing at the required inclination.

'806 patent, col. 7, l. 2 col. 8, l.4 (emphasis added).

### The Prior Art

Two significant prior art references were submitted to the United States Pat-

ent and Trademark Office during prosecution of the '169 and '806 patents. These include German Patent No. 357243 issued to Grabowski ("Grabowski patent") and German Patent No. 2239382 issued to Greissinger ("Greissinger patent").

The Grabowski patent relates to a "leg correction apparatus" that attempts to "straighten a leg that is crooked along its length." Grabowski patent, p. 1. The device employs "two supporting and straightening rods equipped with strengthening straps and tightening straps and linked to each other at the knee joint." *Id.* This device allows for inclination of the rods relative to the knee joint by means of a hinge. *Id.*

The Greissinger patent discloses a "splint device for the correction of human joints." Greissinger patent, p. 1. This device consists of two rigid arms, connected by a hinge at the knee and one spring loaded joint which allows for the "swinging" of the splints relative to each other. *See id.* The springs allow for easier and more comfortable application of the splint to the leg while giving the splint the ability to return to its original form. *See id.*

## Prior Proceedings

Gen II filed a complaint against Med Tech on October 30, 1995, alleging that Med Tech's Thruster infringes claims 1, 2, 9, 16, and 18–21 of the '169 patent, as well as claim 1 of the '806 patent. In response, Med Tech filed a motion for summary judgment arguing that the term "controlled," recited in claim 1 of both the '169 patent and the '806 patent, should be construed to mean "fixed" and the "means" for performing the functions claimed in the '169 and '806 patent should be limited to structures consisting of a knee brace having mechanisms to lock the arms into place.

In denying Med Tech's motion, the district court declined to adopt Med Tech's proposed construction of "controlled" to mean "fixed." Instead, the district court adopted what it characterized as the ordinary definition of the term "controlled," i.e., "guided or directed," but not necessarily "locked or fixed." In addition, the district court noted that "guided or directed" implies a restraining influence over time, not an isolated check.

Just before trial, Med Tech filed a "Motion in Limine And Request for Markman Hearing" requesting that the court interpret the phrase "joint means in the brace to allow controlled medial and lateral inclination of each rigid arm relative to the pivotal joint." In particular, Med Tech asserted that the foregoing phrase means that the angle of the arm is to be controlled by the "joint means" throughout the range of motion of the pivotal joint. In response to this motion, the district court held a *Markman* hearing and construed the "joint means" in claim 1 of the '169 patent as being in means-plus-function form, the function being control of the angle of the arms "by the 'joint means' throughout the range of motion of the pivotable joint." In other words, the court found that Gen II's patent only covers braces that control the angle of inclination throughout the range of motion of the brace.

Gen II filed a motion for reconsideration, and the district court ordered a second *Markman* proceeding for which it asked the parties to submit briefs on "all claim construction issues." *Generation II Orthotics v. Med. Tech. Inc.,* No. C95–1842C (W.D.Wash. May 3, 1999) (order granting motion to reconsider claim construction). The court ultimately affirmed its earlier construction requiring control of

the angle of the arms "throughout the range of motion of the pivotable joint." Thereafter, Gen II stipulated to entry of judgment of non-infringement, recognizing that the district court's construction of the function performed by the joint means affected all of the claims in dispute and precluded a finding that the Thruster infringed the '169 patent or the '806 patent. Gen II then appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295 (1994).

## DISCUSSION

A finding of non-infringement is predicated on a two-step analysis. First, the claims are construed to determine their scope. *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Second, a determination is made as to whether the accused device falls within the scope of the claims as construed. *Id.* In this case, Med Tech stipulated to a judgment of non-infringement based on the district court's claim construction. Thus, the only question on appeal is whether the district court erred in its claim construction. Claim construction is an issue of law that we review de novo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc).

### I. Claim 1 of the '169 Patent

Regarding claim 1 of the '169 patent, the only claim limitation in dispute is "joint means in the brace for allowing controlled medial and lateral inclination of each arm relative to the pivotable joint." The parties do not dispute that the "joint means" limitation of claim 1 of the '169 patent is written in means-plus-function form, as defined in 35 U.S.C. § 112, para-

graph 6. Gen II challenges the district court's construction of the functional statement of the "joint means" limitation.

Under paragraph 6 of section 112, the claimed function of the "joint means" must be identified and then the specification must be examined to identify the structure that performs that function. *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1257, 52 USPQ2d 1258, 1263 (Fed.Cir.1999). As we stated in *Micro Chem*, "[§ 112, ¶ 6] does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim." *Id.* Correctly identifying the claimed function is important, because "[a]n error in identification of the function can improperly alter the identification of the structure ... corresponding to that function." *Id.* In this case, the district court identified the claimed function as "control throughout the brace arm's range of motion." *Generation II Orthotics v. Med. Tech. Inc.*, No. C95–1842C, 2 (W.D.Wash. Aug. 19, 1999). For the reasons set forth below, we hold that the district court erred in identifying the claimed function.

### A. The Claimed Function

The district court construed the recited function of "controlled medial and lateral inclination of each arm" to mean controlled inclination "throughout the range of motion of the brace," or dynamic control. *Id.* Med Tech presents a number of arguments in support of that claim construction. Med Tech asserts that the term "controlled" is in need of defining because there may be more than one meaning to the word. Med Tech also asserts that the claim language requires control of a moving part, and that such control necessarily requires dynamic control as opposed to

static control. Med Tech therefore reasons that the inherent characteristic of dynamic control, i.e., control occurring throughout the range of motion, as contrasted with control occurring at any point in the range of motion, should be imparted to the claim term "controlled." Additionally, Med Tech argues that in order to avoid the Grabowski and Greissinger patents that are part of the prosecution history, Gen II's device must have controlled inclination throughout the range of motion of the brace.

### 1.

The district court restricted the meaning of "controlled" to require control of the inclination of the arms "throughout the range of motion of the pivotable joint." The district court erred in so restricting the function of the "joint means" of claim 1 of the '169 patent, which literally recites merely "allowing controlled medial and lateral inclination of each rigid arm relative to the pivotable joint."

The construction of the function of the "joint means" in the present case is analogous to our construction of the "weighing means" means-plus-function limitation in *Micro Chem.* In that case, the recited function of the "weighing means" was "weighing different weights of" additives or "determining the weights of" additives. *Micro Chem.,* 194 F.3d at 1258, 52 USPQ2d at 1263. Because the specification disclosed multiple methods of weighing, and at least one method of weighing was disclosed as being "too slow or too inaccurate" for handling additives, *id.* at 1255, 194 F.3d 1250, 52 USPQ2d at 1261, the district court limited the function of "weighing" to include only the sequential and cumulative weighing described in the preferred embodiments of the invention,

*id.* at 1258, 194 F.3d 1250, 52 USPQ2d at 1263. Despite the fact that there were multiple methods of weighing disclosed in the specification, at least one of which was disclosed as being undesirable, this court refused to limit the function of weighing beyond its ordinary meaning. *Id.* at 1258, 194 F.3d 1250, 52 USPQ2d at 1263. The court reasoned that to do so would impermissibly limit the claim by adopting a function different from that explicitly recited in the claim, and such an error in identification of the function could improperly alter the identification of the structure corresponding to that function. *Id.*

In this case, Med Tech argues that because there are different types of control, i.e., static control and dynamic control, and because the teaching of the specification implies that the "joint means" performs only dynamic control, the "control" function must be restricted to dynamic control. However, under the teachings set forth in *Micro Chem,* we decline to restrict the claimed function of "controlled" to either static or dynamic control. To do so would impermissibly limit the claim by adopting a function different from that explicitly recited in the claim, and such an error in identification of the function could improperly alter the identification of the structure corresponding to that function.

Med Tech likens the term "controlled" to the term "when" at issue in *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 48 USPQ2d 1117 (Fed.Cir. 1998). Med Tech's assertion lacks merit for a number of reasons. First, in the present case, we are construing the functional statement in a means-plus-function limitation. When construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a

function different from that explicitly recited in the claim. *Micro Chem.*, 194 F.3d at 1258, 52 USPQ2d at 1263.

Second, in *Renishaw,* this court found in the specification a clear intent of the inventor to limit the term "when" to a more specific "at the time of or immediately thereafter." The court relied on several passages in the specification indicating that the invention was aimed at making the delay between stylus contact of the workpiece and signal generation "as small as possible." *Id.* at 1253, 158 F.3d 1243, 48 USPQ2d at 1124.

Med Tech's application of *Renishaw* to the facts of this case is flawed, because defining the term "when" to include instantaneous generation of the trigger signal was clearly necessary to give effect to the patentee's description of the invention as having but a singular purpose, namely producing a machine that provides very accurate, very precise probe readings by maintaining tight control over the position of the stylus. Such readings could only be obtained if the probe triggers very soon after contacting the workpiece. In the present case, although Med Tech asserts that the "whole purpose" of the claimed brace "is the dynamic application of force to an osteoarthritic knee as the knee joint is flexed and extended," we find no evidence in the record that control throughout the entire range of motion of the knee brace is the singular purpose of the invention described throughout the specification by the patentee. To the contrary, the written description specifies that the treatment of osteoarthritis entails "applying a force to the knee *as the knee moves to extension,*" emphasizing the importance of controlling the force applied to the knee when the leg is in a fully extended, weight bearing position and suggesting that the

purpose of the invention is served by control over less than the entire range of motion of the knee brace. '169 patent, col. 1, ll. 12–14 (emphasis added).

### 2.

With respect to Med Tech's assertion that control of a moving part implies dynamic control, and therefore that the inherent characteristic of dynamic control should be imparted to the claim term "controlled," we decline to limit the claim term "controlled" to such an alleged inherent characteristic. To do so would be contrary to the teaching of *Micro Chem,* which instructs us that we must not limit the claim by adopting a function different from that explicitly recited in the claim. *Micro Chem.,* 194 F.3d at 1258, 52 USPQ2d at 1263.

### 3.

▮ We now address Med Tech's assertion that in order to avoid the Grabowski and Greissinger patents that are a part of the prosecution history, Gen II's device must have controlled inclination throughout the range of motion of the brace. We find this argument unavailing. Med Tech is essentially asking us to construe the claims to avoid ensnaring the prior art (i.e., to preserve their validity). *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1556, 42 USPQ2d 1737, 1743 (Fed.Cir.1997). However, claims can only be construed to preserve their validity where the proposed claim construction is "practicable," is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims. *See Rhine v. Casio, Inc.,* 183 F.3d 1342, 1345, 51 USPQ2d 1377, 1379 (Fed.Cir.1999). On this issue, we need not determine whether limitation

of the claimed "controlled" function is practicable or based on sound claim construction principles, because the Grabowski and Greissinger patents do not require us to so limit the "controlled" function to preserve the validity of claim 1 of the '169 patent.

During prosecution of the '169 and '806 patents, the two principal arguments that Gen II set forth to distinguish its invention from the Grabowski patent were that the Grabowski patent: (1) did not provide any support for the knee, because it was a splint and not a brace; and (2) did not apply forces to the knee, but rather to the upper and lower parts of the leg in an effort to straighten it. Additionally, Gen II amended the apparatus claims during reexamination of the '169 patent to read "substantially rigid arms." The rods recited in the Grabowski patent are flexible. Grabowski patent, p. 1.

Med Tech argues that the "rigid arms" limitation was really added by Gen II to provide a fixed angle of inclination of the brace arms, i.e., that its device has control throughout the range of motion of the brace arms. We decline Med Tech's invitation to limit claim 1 based on this alleged singular difference between the claimed invention and Grabowksi. The record makes it clear that the "rigid arm" limitation was not meant to define the movement of the arms, but rather, to describe how the arms support the wearer's knee when forces are applied thereto.

Med Tech also asserts that the Grabowski patent discloses a brace with arms connected by a spring loaded joint (not locking the degree of inclination), which would anticipate the Gen II invention if the device did not have control throughout the range of motion. We disagree. In view of other differences between the claimed de-

vice and the Grabowski patent, the Grabowski patent would not anticipate claim 1, even absent limitation of claim 1 to dynamic control.

We agree with Gen II that the Greissinger patent is irrelevant to the question of what "controlled" means. The Greissinger patent only allows for "swinging" of one arm relative to the pivotable joint. "Swinging" implies an absence of control. Before the district court, Gen II distinguished over the Greissinger patent by explaining that it does not allow both arms to incline relative to a pivotable joint as the patented device does.

Upon consideration of the prosecution history of the '169 patent, we find that neither of the cited references requires us to interpret Gen II's device as having control throughout the range of motion of the brace arms.

4.

 We recognize that it is important to bear in mind that the viewing glass through which the claims are construed is that of a person skilled in the art. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed. Cir.1992); *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1579, 6 USPQ2d 1557, 1560 (Fed.Cir.1988). "Although the patent file may often be sufficient to permit the judge to interpret the technical aspects of the patent properly, consultation of extrinsic evidence is particularly appropriate to ensure that his or her understanding of the technical aspects of the patent is not entirely at variance with the understanding of one skilled in the art." *Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1168 (Fed.Cir.1999).

Med Tech argues that one skilled in the art would understand "controlled" to require restraint throughout the entire range of motion. However, Med Tech admitted during oral argument before this court, that there was no evidence at all in the record that one skilled in the art would read such a limitation into the word "controlled." The only indication in the record of how one skilled in the art would interpret "controlled" comes from intrinsic evidence and the statements made by Gen II's expert, Dr. Keaveny. He testified that controlled medial and lateral inclination does not require control throughout the range of motion of the knee brace.

### 5.

For the foregoing reasons, we hold that the district court erred in determining the meaning of the term "controlled medial and lateral inclination." We can discern no sound basis on which to conclude that the word "controlled," as used in the claims, is in need of defining or that the functional statement of which it is a part should be modified or limited to a function other than that explicitly recited in the claim. The district court should have construed the claim limitation "controlled" according to its ordinary and accustomed meaning, rather than importing a characteristic of a disclosed or preferred embodiment into that term. Thus, we hold that the term "controlled," as recited in the claims of the '169 and '806 patents, retains its ordinary and accustomed meaning as simply restrained in some manner and is not limited to require control over a particular range of motion. *Stedman's Medical Dictionary* 405 (27th ed.2000) (defining "control" as "[t]o regulate, restrain, correct, restore to normal").

### B. The Corresponding Structure

■ Now that we have defined the claimed function of the "joint means" limi-tation, we must identify structure described in the patent specification that corresponds to the claimed function. *Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311, 58 USPQ2d 1607, 1613 (Fed.Cir.2001). "Structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (citing *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424, 43 USPQ2d 1896, 1900 (Fed.Cir. 1997)).

Looking at the specification of the '169 patent, control of medial and lateral inclination of the brace arms is accomplished, in the embodiment of Figures 2 and 3, by the adjustable joints 44 on each brace arm. In the embodiment of Figures 4 and 5, control of medial and lateral inclination is accomplished by the hinge 64 that is formed in the pivotable joint. In the embodiment of Figures 6 and 7, control of medial and lateral inclination is accomplished by the hinge 64 on each brace arm. In the embodiment of Figures 8 through 10, control of medial and lateral inclination is accomplished by the combination of the hinge 64 on each brace arm, and the screws 54, 62 that make up an adjustable joint similar to that disclosed in the embodiment illustrated in Figures 2 and 3. These are the structures disclosed in the specification that correspond to and perform the claimed function of "controlled medial and lateral inclination." Thus, in accordance with § 112, paragraph 6, the "joint means" limitation is properly construed as covering these structures and their equivalents.

Having thus identified the structures corresponding to the claimed function, we remand to the district court to determine

whether Med Tech's Thruster infringes Gen II's patents under our claim construction.

## II. Method and Apparatus Claims

■ The parties dispute whether 35 U.S.C. § 112, paragraph 6, applies to claims 16 and 21 of the '169 patent and claim 1 of the '806.

The district court determined that § 112, paragraph 6, applies to method claim 16 of the '169 patent and method claim 1 of the '806 patent. In making this determination, the court relied solely on the fact that the limitations recited in these method claims were similar to the means-plus-function limitations recited in claim 1 of the '169 patent. *Id.* Med Tech asserts that the district court was correct in its determination that because these method claims recite similar functional language as in the apparatus claims, they should be interpreted in the same manner as the apparatus claims. Med Tech also asserts that the district court was correct in stating that it would "undermine the compromise struck by § 112, paragraph 6, if a patentee could avoid the strictures of that section by simply embedding a purely functional description of a patented device in a method claim."

■ We hold that the district court erred in its determination that paragraph 6 of § 112 applied to claim 16 of the '169 patent and claim 1 of the '806 patent. The district court's decision and reasoning directly contradict this court's previous holdings regarding the applicability of § 112, paragraph 6, to method claims. *O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1583, 42 USPQ2d 1777, 1782 (Fed.Cir.1997). The mere fact that a method claim is drafted with language parallel to an apparatus claim with means-plus-function language does not mean that the method claim should be subject to an analysis under § 112, paragraph 6. *Id.* Rather, each limitation of each claim must be independently reviewed to determine if it is subject to the requirements of § 112, paragraph 6. *Id.*

Both claim 16 of the '169 patent and claim 1 of the '806 patent recite "locating a brace about the knee" and "adjusting the inclination" of the brace arms. In addition, these two claims include the phrase "a joint in the brace to allow controlled medial and lateral inclination of each arm relative to a pivotable joint." Because claim 16 of the '169 patent and claim 1 of the '806 patent do not use the words "means for" with regard to the structural "joint" limitation, and do not use the words "step for" with regard to the "locating" and "adjusting" steps, there is a presumption that these limitations are not subject to section 112, paragraph 6. *Watts,* 232 F.3d at 881, 56 USPQ2d at 1838. Furthermore, these limitations contain no language that would overcome the presumption. Consequently, the district court erred by construing claim 16 of the '169 patent and claim 1 of the '806 patent to have the same scope as claim 1 when, instead, it should have construed each claim independently.

Regarding apparatus claim 21 of the '169 patent, we agree with the district court's holding that the claim does not invoke § 112, paragraph 6. Claim 21 includes the limitation "an adjustable joint coupled to each rigid arm for allowing controlled medial and lateral inclination of each rigid arm relative to the pivotable joint." Paragraph 6 of section 112 is presumed not to apply to this limitation in light of the absence of the phrase "means for." Moreover, the district court found

that the structural recitation of the "adjustable joint" corresponding to the claimed function was sufficient to obviate any implication of § 112, paragraph 6.

Gen II asserts that although the district court was correct in holding that there is sufficient structure recited in the claim so that § 112, paragraph 6 should not apply, the district court erred in interpreting the function "for allowing controlled medial and lateral inclination of each rigid arm relative to the pivotable joint" to require control throughout the entire range of motion of the arms. Med Tech argues that the term "adjustable joint" does not provide sufficient structure corresponding to the function of "allowing controlled medial and lateral inclination of each rigid arm relative to the pivotable joint" and thus contends that § 112, paragraph 6 should be applied to the claim.

We agree with the district court and hold that the recitation of structure in claim 21 supports the presumption that § 112, paragraph 6 is inapplicable. Med Tech has provided us with no evidence to overcome the presumption that claim 21 is not in means-plus-function form and we are not persuaded by any of Med Tech's arguments that the district court erred on this point. However, as we noted above, the district court erred in construing the term "controlled" to require control throughout the entire range of motion of the knee brace.

## CONCLUSION

We hold that the district court erred in its construction of the term "controlled" in the functional statement of the means-plus-function limitation of claim 1 of the '169 patent, and erred in its application of 35 U.S.C. § 112, paragraph 6 to method claim 16 of the '169 patent and method claim 1 of the '806 patent. At the same time, we affirm the district court's determination that § 112, paragraph 6 does not apply to claim 21 of the '169 patent, but hold that it erred in its construction of the term "controlled" in claim 21. Accordingly, we remand for further proceedings consistent with the claim construction provided in this opinion.

*AFFIRMED–IN–PART, VACATED–IN–PART,* and *REMANDED.*