Mark A. FREEMAN and Timothy
K. Stringer, Plaintiffs,

v.

GERBER PRODUCTS COMPANY,
Defendant.

Mark A. Freeman and Timothy
K. Stringer, Plaintiffs,

v.

PLAYTEX PRODUCTS,
INC., Defendant.

Nos. 02–2249–JWL, 02–2250–JWL.

United States District Court,
D. Kansas.

Sept. 30, 2003.

See also 269 F.Supp.2d 1304.

Adam P. Seitz, Bart Alan Starr, Basil Trent Webb, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for plaintiff.

Laurence R. Tucker, Armstrong Teasdale LLP, Kansas City, MO, Matthew G. Reeves, Michael O. Sutton Locke, Liddell & Sapp LLP, Houston, TX, for Defendant.

Adam R. Alper, Matthew B. Lehr, Latham & Watkins LLP, Menlo Park, CA, James P. Barabas, Robert J. Gunther, Latham & Watkins LLP, New York, NY, Paul S. Penticuff, Thomas N. Sterchi, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Interested Party.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs Mark A. Freeman and Timothy K. Stringer allege that certain sippy cups sold by the defendants in these consolidated cases, Gerber Products Company ("Gerber") and Playtex Products, Inc. ("Playtex"), infringe certain claims of their patent, United States Patent No. 5,186,347 (the " '347 patent"). The matter is now before the court on plaintiffs' request pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), for the court to construe claims 7 and 14 of the '347 patent as a matter of law. The court held a *Markman* hearing on September 10, 2003, and is now prepared to rule. As explained below, the court determines that claim elements 7(b), 7(e), 14(b), and 14(e) are indefinite in scope, and claims 7 and 14 of the '347 patent are therefore invalid as a matter of law.

## FACTUAL BACKGROUND

In 1991, plaintiffs applied to the United States Patent and Trademark Office ("PTO") for a patent claiming a spill-proof closure used in dispensing liquid beverages. On February 16, 1993, the PTO issued the '347 patent in favor of plaintiffs. Claim 7 of the '347 patent reads as follows:

A controllable valved closure for use in dispensing a beverage from a container, said closure comprising:

(a) a substantially planar cover portion conforming in shape to the opened end of said container;

(b) attachable means for selectively maintaining said closure in covering relation with said container;

(c) an elongated passageway having an outer end, said passageway extending

upwardly and outwardly from said cover portion;

(d) an opening located near said outer end of said passageway, said opening providing communication between the interior and exterior of said passageway, and said opening being completely contained within the user's mouth during operation of the closure;

(e) a thin membrane having attachable means for attaching said thin membrane to an inner surface of said closure, said thin membrane covering said opening in said passageway; and

(f) a slit through a planar section of said thin membrane, said slit functioning to provide an opening through said thin membrane when an external negative pressure exists and remain closed when internal and external pressures are equal.

On September 14, 1999, the PTO issued a certificate correcting two lines in claim 14 of the patent. As amended, claim 14 of the '347 patent reads as follows:

A controllable valved closure for use in dispensing a beverage from a container, said closure comprising:

(a) a substantially planar cover portion conforming in shape to the opened end of said container;

(b) attachable means for selectively maintaining said closure in covering relation with said container;

(c) an elongated passageway having an outer end, said passageway extending upwardly and outwardly from said cover portion;

(d) an opening in said closure which communicates between the interior and exterior of said passageway;

(e) a thin membrane having attachable means for attaching said thin membrane to an inner surface of said closure, said thin membrane sealing off said opening in said closure; and

(f) a disjoined portion within a planar section of said thin membrane, said disjoined portion functioning to provide a flow passage through said thin membrane when said thin membrane is stressed and said disjoined portion forming a seal when said thin membrane is unstressed.

Defendants Gerber and Playtex manufacture certain spill-proof sippy cups that plaintiffs allege infringe claims 7 and 14 of the '347 patent. Plaintiffs now ask the court to construe the meaning and scope of those claims. In response, Gerber argues, among other things, that claim elements 7(b), 7(e), 14(b), and 14(e) cannot be construed because they are indefinite in scope and, therefore, claims 7 and 14 of the '347 patent are invalid.

## LEGAL STANDARDS FOR CLAIM CONSTRUCTION

 Pursuant to *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), claim interpretation is a matter of law exclusively within the province of the court. To determine the proper scope and meaning of the patent claims asserted, the court consults intrinsic evidence in the following order: (1) the claims, (2) the other portions of the written description, and, if in evidence, (3) the prosecution history. *Apex Inc. v. Raritan Computer, Inc.,* 325 F.3d 1364, 1371 (Fed.Cir.2003); *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1339 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002).

 The court begins by focusing on the language of the claims themselves, as there is a strong presumption that claim terms "carry their ordinary meaning as viewed by one of ordinary skill in the art." *Apex,* 325 F.3d at 1371; *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366

(Fed.Cir.2002) (stating there is a "heavy presumption" that claim terms mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art). The court may consult dictionary definitions for assistance in establishing a claim term's ordinary meaning. *Apex*, 325 F.3d at 1371; *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed.Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 2230, 155 L.Ed.2d 1108 (2003).

■ The written description and drawings may also be examined to determine whether the patentee has disclaimed subject matter or has otherwise limited the scope of the claims. *Apex*, 325 F.3d at 1374. However, limitations may not be read into the claims from the written description. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir.2003). Similarly, the mere fact that the drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration. *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir.2000). There is sometimes "a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir.1998).

■ "After examining the written description and the drawings, the same confirmatory measure must be taken with the prosecution history, since statements made during the prosecution of a patent may affect the scope of the invention." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1343 (Fed.Cir.2001). During prosecution, an inventor may surrender coverage of material that would otherwise be covered by a claim; however, the surren-

der must be clear and unmistakable. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325–26 (Fed.Cir.2003).

■ "Courts may also review extrinsic evidence to assist them in comprehending the technology in accordance with the understanding of skilled artisans and as necessary for actual claim construction." *Apex*, 325 F.3d at 1371. However, extrinsic evidence may not be used to vary or contradict the clear meaning of the claim terms. *Id.*

## ANALYSIS & DISCUSSION

For the reasons explained below, the court finds that claim elements 7(b), 7(e), 14(b), and 14(e), which are means-plus-function limitations, recite functions but the specification fails to disclose structures that correspond to those functions. Therefore, those claim elements are indefinite in scope. Accordingly, claims 7 and 14 of the '347 patent are invalid as a matter of law.

### A. Claim Elements 7(b) & 14(b): "attachable means for selectively maintaining said closure in covering relation with said container"

■ The parties and the court agree that claim elements 7(b) and 14(b) are "means-plus-function" limitations,[1] as permitted by 35 U.S.C. § 112, ¶ 6, which "allows a patentee to express a claim limitation by reciting a function to be performed rather than by reciting structure or materials for performing that function." *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1350 (Fed.Cir.2003). In construing means-plus-function claim limitations, the court must first identify the claimed function using traditional tools of

---

1. The terminology "attachable means" is generic and does not sufficiently describe any structure that would allow a person skilled in the art to be able to determine what structure performs the recited function.

claim construction. *Intellectual Prop. Dev., Inc. v. UA–Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed.Cir.2003); *Omega Eng'g*, 334 F.3d at 1330. "Then, the court must identify 'the corresponding structure, material, or acts described in the specification.'" *Intellectual Prop. Dev.*, 336 F.3d at 1319 (quoting 35 U.S.C. § 112, ¶ 6); *see also Omega Eng'g*, 334 F.3d at 1330 (noting the court then determines the structure corresponding to the identified function).

▪ The parties agree that the function recited in claim elements 7(b) and 14(b) is selectively maintaining said closure in covering relation with said container. However, they dispute whether the '347 patent adequately identifies a structure that corresponds to this function. The written description does not identify any structure to perform this function. Figures 2 and 5 both illustrate that the base of the lid has a rim that fits around the outside of the beverage container. Defendants argue that this illustration is insufficient because the structure corresponding to the recited function must be identified in the written description or prosecution history, not merely in a drawing, and therefore claims 7 and 14 of the '347 patent are invalid because they are indefinite.

Title 35 U.S.C. § 112, ¶ 6 provides:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

This statutory provision allows a patentee to "define the structure for performing a particular function generically through the use of a means expression, provided that it discloses specific structure(s) corresponding to that means in the patent specification." *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1360 (Fed.Cir. 2000); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1380–82 (Fed.Cir.1999) (holding the structure corresponding to a means-plus-function limitation must be disclosed in the specification). "This provision represents a *quid pro quo* by permitting inventors to use a generic means expression for a claim limitation *provided that* the specification indicates what structure(s) constitute(s) the means." *Atmel Corp.*, 198 F.3d at 1381 (emphasis in original); *Budde v. Harley–Davidson, Inc.*, 250 F.3d 1369, 1377 (Fed. Cir.2001) ("As a quid pro quo for the convenience of employing § 112, paragraph 6, Budde has a duty to clearly link or associate structure to the claimed function."). If a patentee fails to disclose adequate structure corresponding to the recited function, the claim has an indefinite scope and, therefore, is invalid under 35 U.S.C. § 112, ¶ 2. *Intellectual Prop. Dev.*, 336 F.3d at 1319; *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed.Cir.1994) (en banc).

▪ "A challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." *Budde*, 250 F.3d at 1376–77; *see also Atmel Corp.*, 198 F.3d at 1378 (court must determine "whether sufficient structure [is] disclosed in the specification based on the understanding of one skilled in the art"). The fact that this issue is resolved from the standpoint "of one skilled in the art in no way relieves the patentee of [its obligation to] adequately disclos[e] sufficient structure in the specification." *Atmel Corp.*, 198 F.3d at 1378. Rather, "if one employs means-plus-function language in a claim, one *must* set forth in the specification an adequate disclosure showing what is meant by the

claim language." *Donaldson,* 16 F.3d at 1195 (emphasis added); *see also In re Dossel,* 115 F.3d 942, 946 (Fed.Cir.1997) ("Failure to describe adequately the necessary structure, material, or acts [corresponding to a means-plus-function limitation] in the written description means that the drafter has failed to comply with § 112, ¶ 2."); *B. Braun Med., Inc. v. Abbott Labs.,* 124 F.3d 1419, 1424 (Fed.Cir. 1997) ("[The] structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history links or associates that structure to the function recited in the claim[.]"). The disclosure in the specification is then interpreted "in light of the knowledge of one skilled in the art." *Atmel Corp.,* 198 F.3d at 1379.

In this case, claim elements 7(b) and 14(b) generically describe the structure for performing the recited function as "attachable means." The specifications state that "[t]he closure 10 ... can be *attached* to the beverage container 11." Col. 2, ll. 58–59 (emphasis added). However, the specification does not identify any structure to perform the function of attaching the lid to the beverage container. Plaintiffs ask the court to construe these claim elements consistent with Figures 2 and 5, both of which reflect, as plaintiffs' expert testified, a friction fit between the lid and the beverage container. However, like the specification, this argument still fails to disclose a *structure* for attaching the lid to the beverage container. Further, plaintiffs' expert's opinion was based on his interpretation of Figures 2 and 5, not the specification. *See, e.g., Atmel Corp.,* 198 F.3d at 1382 (holding the knowledge of one skilled in the particular art may be used to understand what structure the specification discloses "only ... in relation to structure that is disclosed in the specification").

The plain language of the relevant statutes indicates that drawings such as Figures 2 and 5 in this case cannot be used to satisfy the structural component of the means-plus-function limitation. Title 35 U.S.C. § 112 is titled "Specification." It states that a patent specification "shall contain a written description of the invention, and of the manner and process of making and using it ... and shall set forth the best mode contemplated by the inventor of carrying out his invention." *Id.* § 112, ¶ 1. The specification "shall conclude" with the patent claims. *Id.* § 112, ¶ 2. The claims can be written in independent, dependent, or multiple dependent form. *Id.* § 112, ¶¶ 3–5. The claims can also be expressed in means-plus-function format. *Id.* § 112, ¶ 6. The statute specifically states that means-plus-function limitations "shall be construed to cover the corresponding structure, material, or acts *described in the specification.*" *Id.* (emphasis added).

An entirely different statutory provision, 35 U.S.C. § 113, is titled "Drawings." It requires a patent applicant to "furnish a drawing where necessary for the understanding of the subject matter sought to be patented." *Id.* § 113. Thus, these statutes regard a patent's drawings as separate and distinct from the specification.

This is further evidenced by 35 U.S.C. § 111, which requires a patent application to include "a specification as prescribed by section 112 ... [and] a drawing as prescribed by section 113," *id.* § 111(a)(2)(A), (B), thus illustrating that the terms "specification" and "drawings" are statutorily regarded as separate and distinct. By comparison, § 112, ¶ 6 expressly requires the structure corresponding to a means-plus-function limitation to be "described in the specification." Notably absent from this statute is the word "drawings," an alternative that would allow the structure corresponding to a means-plus-function limitation to be illustrated in the drawings.

Thus, the only conclusion that can be reached based on the plain language of the statute is that the specification itself, not the drawings, must disclose corresponding structure. *Donaldson*, 16 F.3d at 1195 ("[I]f one employs means-plus-function language in a claim, one must set forth *in the specification* an adequate disclosure showing what is meant by the claim language." (emphasis added)).

The court is well aware that patent claims are presumed valid. 35 U.S.C. § 282. However, it is noteworthy that in *Donaldson* the Federal Circuit recognized "the PTO's sweeping practice of interpreting means-plus-function language as reading on each and every means of performing that function[.]" *Id.* at 1193 n. 3. The Commissioner argued that his interpretation of the patent at issue in *Donaldson* was "entitled to deference in view of ... the PTO's sweeping and long-standing practice of not applying paragraph six during examination." *Id.* at 1194. The Federal Circuit disagreed, explaining that "[t]he fact that the PTO may have failed to adhere to a statutory mandate over an extended period of time does not justify its continuing to do so." *Id.* Notably, the Federal Circuit issued this en banc opinion in 1994, the year *after* the PTO issued the '347 patent to plaintiffs in 1993. Thus, it appears the PTO very well may not have scrutinized plaintiffs' patent application very closely, if at all, to determine whether the specification adequately disclosed structures corresponding to the means-plus-function limitations. Accordingly, the typical statutory presumption of validity has lost some of its impetus here. *See also, e.g., Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1114 (Fed. Cir.2002) ("Although it remains true that we will construe claims to preserve validity, if possible, ... where the specification fails to disclose structure corresponding to the claimed function, it is impossible.").

The court also recognizes that case law permits a fairly general disclosure in the specification as long as a person skilled in the art would understand that the disclosed structure is sufficient to perform the recited function. *See, e.g., Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1347–48 (Fed.Cir.2002) (holding a specification's reference to a "cut-out portion or void" constituted sufficient structure because one skilled in the art would have recognized the V-notch as part of a conventional system for performing the recited function); *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371–72 (Fed.Cir.2001) (holding the specification's reference to a "selector" constituted sufficient structure because one skilled in the art would have understood the term); *Budde*, 250 F.3d at 1382 (Fed.Cir.2001) (holding the specification's reference to "commercially available vacuum sensors" constituted sufficient structure where one skilled in the art would have understood the reference). However, all of these cases involved a specification that at least identified *some* structure that a person skilled in the art could interpret. *See, e.g., Atmel Corp.*, 198 F.3d at 1382 (remarking that "[a]ll one needs to do in order to obtain the benefit of [§ 112, ¶ 6] is to recite *some* structure corresponding to the means in the specification" (emphasis added)). Here, the '347 patent fails to identify any structure that corresponds to the recited function. Accordingly, the court has no choice but to hold claim elements 7(b) and 14(b) indefinite. *See generally, e.g., Cardiac Pacemakers*, 296 F.3d at 1106 (affirming the district court and holding a patent invalid for indefiniteness because the specification failed to disclose structure corresponding to the recited functions).

The Federal Circuit has recently explained:

> [T]he statute itself requires disclosure of corresponding structure in the specification, and that disclosure must clearly link the disclosed structure to the claimed function with which it is associated. The public should not be required to guess as to the structure for which the patentee enjoys the right to exclude. The public instead is entitled to know precisely what kind of structure the patentee has selected for the claimed functions, when claims are written according to section 112, paragraph 6....
>
> The established rules in our case law on section 112, paragraph 6 that structure corresponding to the claimed function must be disclosed in the specification with clear linkage between the structure and the claimed function serve worthy goals. Such rules are intended to produce certainty in result. Precision in claiming is not an unreasonable price to pay to gain the benefits of claiming in functional terms under section 112, paragraph 6.

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1219–20 (Fed.Cir.2003).

In sum, the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function. Accordingly, claim elements 7(b) and 14(b) of the '347 patent are indefinite in scope, and claims 7 and 14 of the '347 patent are therefore invalid as a matter of law.

**B. Claim Elements 7(e) & 14(e): "a thin membrane having attachable means for attaching said thin membrane to an inner surface of said closure, said thin membrane covering said opening in said passageway" and "a thin membrane having attachable means for attaching said thin membrane to an inner surface of said closure, said thin membrane sealing off said opening in said closure"**

■ Again, the parties and the court agree that claim elements 7(e) and 14(e) are means-plus-function limitations.[2] The parties also agree that the recited function in each of these claim elements is attaching the thin membrane to an inner surface of the closure. They dispute whether the '347 patent adequately discloses structure corresponding to this function.

Following are excerpts from the written description:

> The upper end of spout 12 is open prior to the assembly or insertion of the thin membrane 13 which is *insert molded or otherwise attached* to the inner surface of spout 12. This provides sealing engagement between the periphery of the inner surface of the spout 12 and the outer surface of the thin membrane 13, thus preventing leakage in this area.

> . . . . .

> After the closure 10 is manufactured to the form shown in FIG. 4, the thin membrane 13 is *assembled or insert molded* into the spout 12....

**2.** The terminology "attachable means" is generic and does not sufficiently describe any structure that would allow a person skilled in the art to be able to determine what structure performs the recited function. Admittedly, the terminology "a thin membrane having attachable means" suggests that the thin membrane and the attachable means are inte-grally molded together. However, claim elements 7(e) and 14(e) do not state or even imply that the "thin membrane" performs the recited function. Instead, they state that the "attachable means" performs the recited function of attaching the thin membrane to the inner surface of the closure.

Col. 2, ll. 18–26, 48–50 (emphasis added). Figure 2 depicts a somewhat H-shaped structure with the thin membrane being the horizontal component and the two vertical edges presumably serving as the means for attaching the thin membrane to an inner surface of the closure.

Illuminating as Figure 2 might be to an understanding of what structure corresponds to the recited function, the specification of the '347 patent nevertheless fails to disclose a structure to attach the thin membrane to the inner surface of the closure. The only disclosure in the specification of what might constitute the means for performing this function is an explanation that the thin membrane is insert molded, assembled, or otherwise attached to the inner surface of the spout. Insert molding and assembling are processes, not *structures* as is required by § 112, ¶ 6. The specification also explains that attaching the thin membrane to the inner surface of the spout will provide a sealing engagement. Again, though, this merely describes what the attachment will do. It still fails to disclose any structure to perform the function of attaching the thin membrane to the inner surface of the closure. Further, as with respect to claim elements 7(b) and 14(b), the individuals whose opinions plaintiffs rely on to support their argument (two experts and a PTO examiner) all based their opinions on their interpretations of Figure 2, not any language in the claim or the specification.

Thus, as with claim elements 7(b) and 14(b), the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function. Accordingly, claim elements 7(e) and 14(e) of the '347 patent are indefinite in scope, and claims 7 and 14 of the '347 patent are therefore invalid as a matter of law.

The court declines to rule on the parties' other arguments regarding the remaining elements of claims 7 and 14 because the nature of the court's ruling renders those issues moot.

**IT IS THEREFORE ORDERED BY THE COURT** that claim elements 7(b), 7(e), 14(b), and 14(e) are indefinite, and claims 7 and 14 of the '347 patent are therefore invalid as a matter of law.