NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1203, -1204

MARK A. FREEMAN and TIMOTHY K. STRINGER,

Plaintiffs-Appellants,

v.

GERBER PRODUCTS COMPANY,

Defendant-Appellee,

and

PLAYTEX PRODUCTS, INC.

Defendant-Appellee.

———————————————

DECIDED:  January 6, 2005

———————————————

Before MICHEL, <u>Chief Judge</u>,[*] ARCHER, <u>Senior Circuit Judge</u>, and SCHALL, <u>Circuit Judge</u>.

SCHALL, <u>Circuit Judge</u>.

---

[*]        Chief Judge Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

DECISION

Mark A. Freeman and Timothy K. Stringer (collectively, "Freeman") appeal the decision of the United States District Court for the District of Kansas that granted summary judgment of invalidity in favor of Gerber Products Company ("Gerber Products") and Playtex Products, Inc., ("Playtex") in Freeman's consolidated suits against Gerber Products and Playtex (collectively, "Gerber") for infringement of claims 7, 9, 11, 14, 16, 17, 18, and 20 of U.S. Patent No. 5,186,347 (the "'347 patent"). Freeman v. Gerber Prods. Co., Nos. 02-2249, 02-2250 (D. Kan. Oct. 21, 2003) ("Summary Judgment Order"). The district court ruled that the asserted claims were invalid after it concluded that they were indefinite. We reverse and remand.

DISCUSSION

I.

Messrs. Freeman and Stringer are the inventors named on, and the owners of, the '347 patent. The '347 patent is directed to a spill-proof closure for beverage containers. Figure 2 of the patent, which illustrates an embodiment of the invention, is reproduced below.



Figure 2

2

As shown, the closure (10) is attached to beverage container (11). '347 patent, col. 2, ll. 58-59. The closure has a spout (12) containing a thin membrane (13) near its upper end. During normal drinking, liquid flows from the central passageway (15) to the spout (12), and then out through the membrane (13). When external suction is applied, a slit in the membrane opens to allow the beverage to flow from the cup. When suction is released, the edges of the slit close to form a seal that reduces or eliminates leaks and spills. Id. at col. 2, l. 60 – col. 3. l. 7.

The '347 patent contains independent claims 1, 7, and 14 as well as seventeen dependent claims. Claims 7 and 14, which are relevant to this case, are in means-plus-function format pursuant to 35 U.S.C. § 112, ¶ 6. They recite as follows:

> 7. A controllable valved closure for use in dispensing a beverage from a container, said closure comprising:
>
> (a) a substantially planar cover portion conforming in shape to the opened end of said container;
>
> (b) attachable means for selectively maintaining said closure in covering relation with said container;
>
> (c) an elongated passageway having an outer end, said passageway extending upwardly and outwardly from said cover portion;
>
> (d) an opening located near said outer end of said passageway, said opening providing communication between the interior and exterior of said passageway, and said opening being completely contained within the user's mouth during operation of the closure;
>
> (e) a thin membrane having attachable means for attaching said membrane to an inner surface of said closure, said thin membrane covering said opening in said passageway; and
>
> (f) a slit through a planar section of said thin membrane, said slit functioning to provide an opening through said thin membrane when an external negative pressure exists and remain closed when internal and external pressures are equal.

3

14. A controllable valved closure for use in dispensing a beverage from a container, said closure comprising:

(a) a substantially planar cover portion conforming in shape to the opened end of said container;

(b) attachable means for selectively maintaining said closure in covering relation with said container;

(c) an elongated passageway having an outer end; said passageway extending upwardly and outwardly from said cover portion;

(d) an opening in said closure which communicates between the interior and exterior of said passageway;

(e) a thin membrane having attachable means for attaching said thin membrane to the inner surface of said closure, said thin membrane sealing off said opening in said closure; and

(f) a disjoined portion within said thin membrane, said disjoined portion functioning to provide a flow passage through said thin membrane when said thin membrane is stressed and said disjoined portion forming a seal when said thin membrane is unstressed.

'347 patent, col. 4, ll. 3-26 & 45-67.

II.

Freeman sued Gerber Products and Playtex in the District of Kansas for infringement of claims 7, 9, 11, 14, 16, 17, 18, and 20 of the '347 patent by numerous spill-proof cups and lids, spill-proof sport bottles, replacement lids, and replacement valves. Claims 9 and 11 of the '347 patent depend directly or indirectly from claim 7, while claims 16, 17, 18, and 20 depend indirectly from claim 14. Playtex and Gerber Products counterclaimed for declaratory judgments that the asserted claims of the '347 patent are invalid.

After consolidating the cases and holding a <u>Markman</u> hearing, but without construing the claims at issue, the district court determined that the means-plus-function

4

limitations at issue in claims 7 and 14 are indefinite in scope and therefore invalid as a matter of law under 35 U.S.C. § 112, ¶ 2. Freeman v. Gerber Prod. Co., 284 F. Supp. 2d 1290 (D. Kan. 2003) ("Markman Order"). It was undisputed before the district court that the function recited by claim limitations 7(b) and 14(b) is "selectively maintaining said closure in covering relation with said container." Id. at 1294. Similarly, the parties agreed that the function recited by claim limitations 7(e) and 14(e) is "attaching the thin membrane to an inner surface of the closure." Id. at 1297. The district court determined that the '347 patent did not adequately disclose structure corresponding to the functions recited by claim limitations 7(b), 7(e), 14(b), and 14(e).

Before the district court, Freeman argued that Figures 2 and 5 of the '347 patent adequately identify a structure corresponding to the above recited functions. The district court acknowledged that "Figures 2 and 5 both illustrate that the base of the lid has a rim that fits around the outside of the beverage container" and that Figure 2 was "[i]lluminating" to an understanding of the structure corresponding to the function of attaching a thin membrane to the inner surface of the closure. Markman Order at 1294, 1298. Nevertheless, the court found the figures of the '347 patent insufficient to disclose corresponding structure, reasoning that the structure must be identified in the language of the written description or the prosecution history. Id. at 1295, 1298.

The district court granted summary judgment in favor of Gerber, and awarded Gerber a declaratory judgment that all of the asserted claims of the '347 patent are invalid as a matter of law. Summary Judgment Order.

5

04-1203, -1204

We review a grant of summary judgment de novo, without deference to the district court's determinations. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003). Summary judgment is appropriate where there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no reasonable jury could return a verdict for the nonmoving party. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A "determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a conclusion 'that is drawn from the court's performance as the construer of patent claims [and] therefore, like claim construction, is a question of law' as to which we exercise plenary review." Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.., 359 F.3d 1367, 1371 (Fed. Cir. 2004) (quoting Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed. Cir. 1999)).

The claim limitations at issue in this case are written in means-plus-function format pursuant to 35 U.S.C. § 112, ¶ 6, which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Pursuant to § 112, ¶ 6, a structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1424 (Fed. Cir. 1997). Whether the specification adequately sets forth structure corresponding to the claimed functions must be considered from the

6

perspective of one skilled in the art. Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357, 1365-66 (Fed. Cir. 2003). If one fails to set forth an adequate disclosure with respect to the corresponding structure of a means-plus-function limitation, then one has failed to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention," as required by § 112, ¶ 2. In re Donaldson Co., 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).

As seen, the district court determined that the claim limitations "attachable means for selectively maintaining said closure in covering relation with said container" and "a thin membrane having attachable means for attaching said thin membrane to an inner surface of said closure" are indefinite. On appeal, Freeman argues that the court erred in holding that Figures 2 and 5 cannot be used to satisfy the structural component of the means-plus-function limitations and in holding that the language of the specification, not the drawings, must disclose corresponding structure. Freeman argues that one of ordinary skill in the art would readily identify the "attachable means" structures represented in Figures 2 and 5 and would understand those structures to be associated with and capable of performing the claimed functions.

Gerber, in response, contends that merely depicting a structure in a patent's drawings is not enough to clearly link the structure to a particular recited function. According to Gerber, the language of the specification or the prosecution history must perform this function. Gerber points to statements in several of our cases which it argues stand for this proposition: Omega Eng'g, 334 F.3d at 1332 ("Although the splitting device, lenses, and prisms appear in the '880 patent, . . . the specification does not clearly associate those structures with the claimed function.") (citation omitted);

7

04-1203, -1204

Medtronic, Inc. v. Advanced Cardiovascular, 248 F.3d 1303, 1311 (Fed. Cir. 2001) ("We agree with Medtronic that each of these structures is capable of performing the recited function. However, that is not the focus of the inquiry. We must determine whether the straight wire, hooks, or sutures is clearly linked or associated with the function of connecting adjacent elements together.") (citation omitted); B. Braun, 124 F.3d at 1425 ("Although Fig. 3 of the patent shows a valve seat, neither the specification nor the prosecution history contains any indication that the valve seat structure corresponds to the recited function.").

We do not agree with Gerber that Figures 2 and 5 may not be consulted for purposes of determining whether the '347 patent adequately discloses structure corresponding to the recited functions. None of the cases cited by Gerber stands for that proposition. In Braun, the disputed claim limitation recited the function of "holding said disc firmly against said first means in such a manner that said disc is restrained from sideways movement." 124 F.3d at 1422. The specification clearly linked a cross-bar with this function. Id. at 1424. However, the patentee argued that another structure, a valve seat, also performed the recited function of restraining sideways movement. Id. Neither the specification nor the prosecution history contained any indication that the valve seat structure also restrained sideways movement. Id. at 1425. The court found "[t]his lack of association between the valve seat and the recited function [to be] especially striking given the explicitly clear association provided between the traverse cross bar and the recited function." Id.

Similarly, in Medtronic, it was undisputed that the patent disclosed corresponding structure for the recited function of "connecting adjacent elements together," in the form

8

of helical windings. 248 F.3d at 1311. The question before the court was whether the "straight wire and hooks of Figures 7 and 8, and the sutures," were also clearly linked to the recited function and thus were corresponding structures. Id. Although the court noted that the structures represented in Figures 7 and 8 were definitely capable of performing the recited function, the court nonetheless found this disclosure insufficient for lack of a clear link or association between the structures and the recited function. Id. at 1312.

Finally, in Omega Eng'g, the patent specification clearly linked the function of "outlining the periphery of the energy zone" to a combination of a motor, slip rings, counterweights, screw adjustment, and a pivot point. 334 F.3d at 1331-32. However, the patentee contended that one of skill in the art would also understand the lenses, prisms, and a laser beam splitting device disclosed in the patent to be corresponding structures. Id. at 1332. The court rejected this argument, concluding that the alleged corresponding structures were not clearly linked to the recited function. Id.

In each of the cases relied upon by Gerber, the patent specification disclosed multiple structures potentially capable of performing the recited function, but the specification expressly discussed and thus clearly linked only a subset of those structures to the recited function. Most importantly, none of these cases states that the patent drawings may not be consulted in determining whether there is adequate disclosure of structure for performing a function recited in a means-plus-function claim. On the contrary, our cases make it clear that patent drawings may be consulted. See Ferguson Beauregard v. Mega Sys., L.L.C, 350 F.3d 1327, 1338 (Fed. Cir. 2003) (stating that the ordinary and customary meaning of a claim term may be determined by

9

reviewing a variety of sources, including "the claims themselves; dictionaries and treatises; and the written description, the drawings, and the prosecution history.") (citations omitted); Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1324 (Fed. Cir. 2002) ("The words used in the claims are interpreted in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if any.") (citation omitted); Wright Med. Tech., Inc. v. Osteonics Corp.. 122 F.3d 1440, 1443 (Fed. Cir. 1997) ("The proper construction of the claims is based upon the claim language, the written description portion of the specification including any relevant drawings, the prosecution history, and if necessary to aid the court's understanding of the patent, extrinsic evidence.") (citation omitted).

It is clear from the specification that the structures corresponding to the functions recited in claims 7(b), 7(e), 14(b), and 14(e) of the '347 patent are those structures disclosed in Figures 2 and 5. See '347 patent, col. 1, l. 67 – col. 3, l. 7. For example, as far as the function "selectively maintaining said closure in covering relation with said container" is concerned, the specification states that "[t]he closure **10** is circular in shape, having a substantially planar cover portion and may vary in size depending upon the size of the beverage container **11**." Id. col. 2, ll. 5-8. When one looks to the figures referenced in the written specification, it is apparent that the above function is performed by the manner in which the closure (10) fits together with the beverage container (11), as depicted in Figures 2 and 5. As far as the function "attaching the thin membrane to an inner surface of the closure" is concerned, the specification explains that "[a]fter the closure **10** is manufactured to the form shown in FIG. **4**, the thin membrane **13** is assembled or insert molded into the spout **12**." Id., col. 2, ll. 48-50.

10

Once the closure **10** and membrane **13** are manufactured to the forms depicted in the figures of the '347 patent, the specification explains that the "closed position [of the membrane **13**] makes the closure **10**, with the beverage container **11** attached, a spill-proof device even if tipped or over-turned." Id., col. 3, l. 4-6. When one looks to the figures referenced in the written specification, it is apparent that the second function at issue is performed by the manner in which the membrane (13) fits together with the spout (12), as depicted in Figure 2.

Thus, in this case, the only structure disclosed in the specification of the '347 patent that is capable of performing the function of "selectively maintaining said closure in covering relation with said container," is the structure disclosed in Figures 2 and 5. That structure consists of the configuration of the closure (10) with the container (11), as represented in Figures 2 and 5. Likewise, the only structure disclosed in the '347 patent that is capable of performing the function of "attaching the thin membrane to an inner surface of the closure," is the structure disclosed in Figure 2. That structure consists of the configuration of the membrane (13) and the inner spout (12), as represented in Figure 2. We therefore conclude that the district court erred in ruling that the specification lacks disclosure of structure which one skilled in the art would understand as being adequate to perform the functions of "selectively maintaining said closure in covering relation with said container" and "attaching the thin membrane to an inner surface of the closure." It was this ruling which formed the basis for the court's determination that the claims asserted by Freeman against Gerber Products were indefinite.

11

For the foregoing reasons, the district court's grant of summary judgment that claims 7, 9, 11, 14, 16, 17, 18, and 20 of the '347 patent are indefinite and invalid as a matter of law is reversed. The case is remanded to the district court for further proceedings consistent with this opinion, beginning with the construction of the asserted claims. The court will then address remaining validity issues, as well as issues of infringement as appropriate.

04-1203, -1204