**KOR–CT, LLC, Plaintiff,**

v.

**SAVVIER, INC., Savvier LP, and William Suiter, Defendants.**

**No. CIV.A. 3:04CV789SRU.**

United States District Court,
D. Connecticut.

Nov. 10, 2004.

Eliot B. Gersten, John Joseph Robaczynski, Gersten & Clifford, Hartford, CT, for Plaintiff.

William J. Speranza, Wiggin & Dana, Stamford, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

UNDERHILL, District Judge.

Savvier, Inc., Savvier LP, and William Suiter (collectively "Savvier") manufacture an abdominal exerciser. Kor–CT, LLC ("Kor–CT") holds a patent on an abdominal exerciser. Kor–CT believes Savvier's exerciser infringes Kor–CT's patent, and has sued, alleging patent infringement and various other claims. Some of these claims have already been dismissed. Because, reasonable jurors could not side with Kor–CT on those that remain., Savvier's motion for summary judgment is granted.

## I. Facts

The following facts are not genuinely disputable.

### A. *Kor–CT's Patent*

On August 3, 1993, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. 5,232,425 ("the '425 Patent"), entitled "Pivotable Abdominal Exercise Device," to inventors Jack Miller and Ned Gvoich. The patent discloses an abdominal muscle exercise machine, "which facilitates movement of the lower torso against a resistive force and in a complex arc which conforms to the normal forward arc of rotation of the spine." Kor–CT is the exclusive licensee of the rights granted by that patent.

The '425 patent describes three preferred embodiments and makes eleven claims, two of which are relevant to this dispute.

### 1. *Claim 2*

Claim 2, the independent claim relevant to this dispute, asserts the right to:

2. An exercise device adapted for use by a person comprising:

a rigid shaft having a first end, a second end, and a predetermined length;

a handle generally transverse to and attached to the first shaft end;

a housing having a bore therethrough and slidably retaining said rigid shaft, the bore having a first end facing the first end of the shaft and a second end facing the second end of the shaft;

two members adapted for resting the device against the thighs of the person and for maintaining the housing between the thighs of the person;

means for generating a resistive restoring force as the shaft moves relative to the housing in a direction from the first shaft end to the second shaft end;

means for pivoting the shaft in a direction away from the torso as the person presses on the handle, said means for pivoting being positioned on the device and intermediate the first end and second end of the shaft; and

means for limiting the displacement of the shaft relative to the housing, as the shaft moves in a direction from the second shaft end to the first shaft end.

In the original patent application, the second to last element of claim 2 omitted the phrase "said means for pivoting being positioned on the device and intermediate the first end and second end of the shaft" but included the additional element "means for permitting the shaft to move through and relative to the housing." The patent examiner rejected this statement of the claim as anticipated by the prior art, specifically United States Patent No. 5,046,726 invented by Willem J. Van Straaten ("the '726 patent" or "Van Straaten"). The examiner stated:

> In regard to claim 2, Van Straaten teaches rigid shaft, handle, housing, means for anchoring the device to the thighs, means for permitting the shaft to move relative to the housing (i.e. sliding vertically), means for generating resistive force, means for pivoting (i.e. twisting the shaft towards and away from the torso), and means for limiting the displacement of the shaft.

(diagram numbers omitted). The inventor responded to this rejection by pointing out that the '726 patent did not disclose a means for permitting the shaft to move *through* the housing:

> In the Van Straaten '726 device, however, the housing absolutely does not permit the shaft to move through it. This is true for two reasons. First, the bottom of the housing is closed because of the transverse arms. Second, intermediate the closed end of the housing and the bottom portion of the shaft is spring 11. Thus, the Van Straaten device necessarily includes two structural elements which prevent the shaft from moving through the housing.

(diagram numbers and citations to patent omitted).

At a subsequent interview with the patent examiner, "the meaning of the phrase 'means for permitting the shaft to move through' and the location of the housing were discussed, especially the word 'through' and that in its present form, the claim maybe subject to a rejection under 35 U.S.C. § 122, second paragraph, as being vague." Written Summary of Interview of February 18, 1993. The inventor explained that the word "through" was meant to describe "that the shaft of the presented device moved through the first end of the bore as well as the second end of the bore in the housing" and "that such movement of the shaft completely through the housing was impossible for the shaft of the Van Straaten '726 device." *Id.*

As a result of these discussions, claim 2 was amended to its final form, eliminating the reference to moving "through" and substituting the limitation that the means for pivoting the shaft be "intermediate" to the first and second ends of the shaft.

### 2. *Claim 10*

The '425 Patent also claims:

10. The exercise device of claim 2, wherein said means for pivoting the shaft away from the torso comprises a yoke having:

> a first portion including generally opposed first and second flanges, the flanges each having a convexly curved lower surface; and
>
> a second portion generally orthogonal to the first portion.

### 3. *Third Embodiment*

The '425 patent describes three preferred embodiments, the third is relevant to this dispute. That embodiment describes the following means for pivoting the device:

> Pivoting of the device so as to enable maintaining the crunch conformation is accomplished by means of a change of angle of the convexly shaped portions of the surfaces with respect to the anterior surfaces of the upper thighs as the downstroke is executed .... Thus, it

may be seen that the surfaces provide the means by which the shaft is rotated about an axis during reciprocation of the shaft during execution of the crunch technique.

(diagram numbers omitted).

### B. The 6 Second Abs

In late 2003, Savvier began producing its own abdominal exerciser, named "the 6 Second Abs." The 6 Second Abs consists of a wide base, a rectangular middle that slides into the wide base, and Y-shaped handles at the top. The user is instructed to sit down, rest the base on his thighs, grasp the handles, and pull down, sliding the rectangular middle section into the base, where it meets resistance.

The 6 Second Abs is patented in the United States and several foreign countries. In February 2003, it received patents in Germany, Korea, and Japan. In July 2003, it was patented in the People's Republic of China. On September 11, 2003 it received a patent from Taiwan. On March 30, 2004, the USPTO issued Patent No. 6,712,742 ("the '742 patent") to William Suiter, covering the 6 Second Abs.

On September 12, 2003, Savvier aired its first "infomercial" for the 6 Second Abs, referring to it as "patented."

## II. Summary of Issues

First, Kor–CT alleges that the 6 Second Abs infringes claims 2 and 10 of the '425 patent. Savvier responds that the 6 Second Abs does not infringe claim 2 because (a) it contains no means for pivoting the device and (b) even if it had such a means, the means are not positioned "intermediate" to both ends of the shaft. Savvier also argues that, because the 6 Second Abs does not infringe claim 2, it cannot—as a matter of law—infringe dependent claim 10.

Second, Kor–CT alleges that Savvier violated 35 U.S.C. § 292 by "falsely mark-ing" the 6 Second Abs as patented in its September 12 infomercial. Savvier responds that the device was patented at the time, even if not patented in the United States.

## III. Patent Infringement

### A. Standard of Review

■ Deciding whether a patent is infringed involves two steps. First, the court must—as a matter of law—construe the claims. See *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed.Cir.1999). Second, the finder of fact must determine if the device in question infringes, either literally or by an equivalent, one of the patent's claims. *Id.* Summary judgment is, of course, an obvious vehicle for resolution of the first, purely legal, step. Summary judgment is also appropriate for the second step, if there is no genuine issue of material fact. Fed. R. Civ. Proc. 56(c).

■ In construing claims, the court first looks to the language of the claims, the patent specification, and the prosecution history of the patent. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Id.* at 1583.

### B. Claim 2

Claim 2 includes a "means for pivoting the shaft in a direction away from the torso as the person presses on the handle, said means for pivoting being positioned on the device and intermediate the first end and second end of the shaft." The parties dispute the construction of (1) "intermediate the first end and second end of the shaft" and (2) "means for pivoting the shaft."

### 1. Construction of "intermediate"

■ Kor–CT argues that if any part of the pivoting means falls in between the two ends of the shaft, the pivoting means are "intermediate" and covered by the claim. In other words, according to Kor–CT, if even the smallest portion of the pivoting means falls anywhere within the two extremities of the shaft, the entire pivoting means is then "intermediate" the shaft. It is difficult to imagine how, under this construction, a manufacturer could ever securely attach his pivoting means to the shaft of the device, without making the means "intermediate." As a practical matter, therefore, it looks as though Kor–CT's construction would mean any three-dimensional pivoting means, if attached to the shaft, would automatically be "intermediate" the shaft ends.

The intrinsic evidence, including the prosecution history of the '425 patent, indicates a more limited, and more straightforward, construction of the term "intermediate." Specifically, a pivoting means is intermediate the ends of the device's shaft, if, at least at some point during the operation of the device, a length of shaft protrudes on either side of the pivoting means.

To start with, this construction is the one indicated by the ordinary meaning of the phrase "said means for pivoting being positioned on the device and intermediate the first end and second end of the shaft." The phrase indicates that the entire "means" is to be positioned "intermediate" the shaft ends; it does not say, as one would expect if Kor–CT's interpretation were correct, that *some part of the means* is to be positioned "intermediate" the shaft ends.

Moreover, this construction is indicated by the prosecution history, which makes clear that claim 2 was refined to capture the concept that the shaft would pass through both ends of the pivoting means. The original claim language described the shaft as moving *through* the housing. This was then refined to state that the pivot means would be intermediate the shaft. In both cases, the intent was to narrow the claim to avoid the Van Straaten patent—which disclosed a device where the shaft *could not* protrude below the pivoting means—by clarifying that the ends of the shaft of the '425 device would protrude from either side of the pivoting means or "housing" at some point during the operation of the device.[1]

---

1. Kor–CT submitted, less than a day before oral argument, the expert report of Kazem Kazerounian, who states that he believes the term "intermediate" refers to the position relative to the ends of the shaft of the "bore," i.e., the hole into which the shaft goes. As a threshold matter, I am not permitted to consider this extrinsic evidence, because the intrinsic evidence is perfectly clear. *Vitronics*, 90 F.3d at 1583. Furthermore, though undeniably the bore of the 6 Second Abs is intermediate the ends of the shaft, equally undeniably the "bore" of the Van Straaten invention is intermediate the ends of the shaft of that invention. As noted above, during the course of prosecution the inventor explained that his invention differed from Van Straaten's because, in the '425 invention, the shaft passes through *both bores* of the housing. In light of this prosecution history, it is not possible that Mr. Kazerounian's construction is correct.

Kor–CT submitted, also on the eve of oral argument, a declaration by Ned Gvoich, the inventor of the '425 patent, to the effect that the addition of the "intermediate" language was prompted by some other concern of the patent examiner, not obvious from the prosecution history. As just explained, I am not permitted to consider this evidence because the intrinsic evidence is perfectly clear. Moreover, even when courts consider external evidence, they are generally skeptical of considering the self-serving testimony of inventors about what "really happened" at the patent office. *Bell & Howell DMP Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed.Cir.1997) ("The testimony of an inventor often is a self-serv-

### 2. Construction of "means for pivoting the shaft"

■ Savvier argues that the "means for pivoting the shaft" should be construed to mean a "pivot interface," that is, a surface used as the fulcrum for pivoting the device away from the user's torso. Kor–CT disagrees, arguing that this term should be construed as meaning the entire base of the device, that is, the widened structure that rests on the user's thighs.

Savvier argues that this element of claim two—"the means for pivoting the shaft"—is governed by paragraph six of 35 U.S.C. § 112, that is, it is a "means-plus-function" element. Kor–CT disputes this, arguing that despite the use of the term "means" the element is really structural because the structure is later "defined" in claim 10. The law is crystal clear that a dependent claim's description of the structure of an element does not remove the corresponding element of the claim on which it depends from the purview of 35 U.S.C. § 112 ¶ 6. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed.Cir. 1991) ("one cannot escape that mandate [of section 112 ¶ 6] by merely adding a claim or claims specifically reciting such structure or structures"). Accordingly, because the element in question uses the word "means," and because *in claim 2* [2] there is no description of a structure adequate to perform the function claimed, there is no question that the element is a "means-plus-function" element. *See Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1302 (Fed.Cir.1999) (use of word "means" ordinarily indicates means-plus-function claim, but not if claim "also recites suffi-

cient structure or material for performing that function").

■ Because the "means for pivoting" element is a "means-plus-function" element, that element only claims the corresponding structure described in the patent specification, and its equivalents. 35 U.S.C. § 112 ¶ 6. Which are the corresponding structures in the patent specification is a question of law to be decided by the court. *Kemco Sales Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed.Cir. 2000).

In this case the specification describes three embodiments, each containing its own means. The first two embodiments do not even arguably contain a means identical or equivalent to one in the 6 Second Abs, accordingly the only issue is what is the structure in the third embodiment that provides the "means for pivoting the shaft."

■■ A structure disclosed in the specification is only deemed a corresponding structure if the specification clearly links or associates that structure to the function recited in the claim. *Medtronic Inc. v. Advanced Cardiovascular Systems, Inc.*, 248 F.3d 1303, 1311 (Fed.Cir.2001). Structural aspects unrelated to the recited function are not corresponding structures. Here locating the corresponding structures is easy because the third embodiment says, quite explicitly, "*the surfaces* provide the means by which the shaft is rotated about an axis during reciprocation of the shaft during execution of the crunch technique." (emphasis supplied) The surfaces in question are the "convexly shaped portions of

ing, after-the-fact attempt to state what should have been part of his or her patent application"); *see also Vitronics,* 90 F.3d at 1583 (intrinsic evidence "constitute[s] the public record of the patentee's claim, a record on which the public is entitled to rely ... [a]llowing the public record to be altered or changed

by extrinsic evidence ...would make this right meaningless").

2. Of course, the dependent claim—in this case, claim 10—may very well be a structural, and not a "means-plus-function" claim. Claim 10 is discussed below.

the surfaces" that rest on "the anterior surfaces of the upper thighs."

I conclude, therefore, that Savvier is correct, and it is only the surfaces that press against the user's thigh and serve as a pivot point that are claimed by claim 2.

### 3. Infringement

As noted above, whether a device "reads on" a claim and thereby infringes the patent is a question of fact. Similarly, in the context of a "means-plus-function" element, whether a device contains a structure identical or equivalent to the claimed structure is a question of fact. *Odetics Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268–69 (Fed.Cir.1999) (collecting cases). In this case, however, the facts admit of only one possible determination, making summary judgment appropriate.

The initial question is what, if any, part of the 6 Second Abs performs a function identical to or equivalent to the "means for pivoting" described by the '425 patent. Savvier concedes that it is possible for the device to pivot against its bottom surface, and that, if any surface constitutes a pivoting means, it is that one.

Kor–CT argues that it is also possible to use the 6 Second Abs in such a way that its pivot surface is some other surface than the bottom of the device and that such surface falls in between the two ends of the shaft. Kor–CT argues that if the user performs a "reverse-cross crunch" the pivot surface is the side of the device's base, and, if the user performs a "standard low position crunch" the pivot surface is the upper surface of the base. These arguments do not appreciate the concept of a fulcrum. The mere fact that in certain exercises other parts of the device may touch the user's body and shift their angle relative to the user's body does not make them pivot points. In all the hypothetical exercises proposed by Kor–CT the device still pivots around the bottom surface, i.e.,

a non-intermediate surface, even if other surfaces at times come in contact with the user's body.

Consequently, even with all inferences drawn in Kor–CT's favor, the only possible "means for pivoting" the 6 Second Ab, and therefore the only possibly infringing structure, is the bottom convex surface of the device. This surface is unquestionably not between the two ends of the shaft because it is simply not possible for the shaft of the 6 Second Abs to protrude below this surface.

Moreover, even assuming that one of Kor–CT's constructions was correct, the 6 Second Abs would still not read on claim 2. Even assuming a means is "intermediate" if any part of the means falls between the two extremes of the shaft, the 6 Second Abs would still not infringe because no part of its means—the pivot surface—falls between the two extremities of the shaft. Conversely, assuming that the "means for pivoting" included the entire base of the 6 Second Abs, the device would still not infringe because it is impossible for the shaft of the device to protrude below that base. In short, even if only one of the above constructions is correct, the 6 Second Abs would not infringe. As it stands, however, I believe both constructions are appropriate, and, consequently, the 6 Second Abs does not read on claim 2 of the '425 patent.

### 4. Doctrine of Equivalents

Kor–CT also argues, albeit somewhat generally, that even if claim 2 is not literally infringed it is infringed under the doctrine of equivalents. This claim is without merit, if for no other reason than that, in light of the prosecution history of the '425 patent, it is not possible that a pivoting means positioned at the end of a shaft is an equivalent. An inventor cannot use the doctrine of equivalents to assert that a claim covers subject matter that the

inventor was forced to disclaim at the patent office. *Mark I Mkt'g Corp. v. R.R. Donnelley & Sons,* 66 F.3d 285, 291 (Fed. Cir.1995) ("Prosecution history estoppel precludes a patentee from obtaining in an infringement suit patent protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims."). In this case, Kor–CT cannot claim that a pivoting means positioned on an end is an "equivalent" to an intermediate positioned means, when it was forced to disclaim that subject matter in its patent application in order to avoid prior art. Accordingly, because the 6 Second Abs has its pivoting means at the end of the shaft, there can be no infringement under the doctrine of equivalents.[3]

### C. Claim 10

Savvier argues that because the 6 Second Abs does not infringe claim 2, an independent claim, it cannot—as a matter of law—infringe claim 10, which is dependent on claim 2. There is no need for me to rule on Savvier's general proposition because, in this case, there is no infringement of claim 10, regardless of whether claim 2 has been infringed.[4]

Claim 10, unlike claim 2, appears to claim an actual pivoting structure,[5] rather than a "means-plus-function." Specifically, it claims a means for pivoting comprising a yoke having:

a first portion including generally opposed first and second flanges, the flanges each having a convexly curved lower surface; and

a second portion generally orthogonal to the first portion.

The intrinsic evidence does not provide much insight into the meaning of the terms used in this claim, such as "yoke" and "flange." Under these circumstances, resort to extrinsic evidence is appropriate.

Merriam–Webster's dictionary gives two definitions of the noun "flange," the most relevant is "a rib or rim for strength, for guiding, or for attachment to another object." It gives seven definitions of the noun "yoke," the most relevant is "a clamp or similar piece that embraces two parts to hold or unite them in position." These definitions are consistent with the drawings of the various embodiments, each of which has two convexly shaped ribs meant to guide or attach to the user's legs.

It is worth nothing that the 6 Second Abs does not appear to read on the structure described in claim 10. The 6 Second Abs contains only one convex surface, or flange, that touches, but does not hold in position, the user's legs.[6] Nevertheless, even assuming that the base of the 6 Second Abs does constitute a "yoke," the device still does not infringe claim 10.

---

3. The affidavit of the '425 inventor, who declares that he did not intend to disclaim non-intermediate positioned means, is irrelevant. Prosecution history estoppel is determined by the court as a matter of law, and is based on an objective standard. *Instituform Tech., Inc. v. Cat Contr., Inc.,* 99 F.3d 1098, 1107 (Fed. Cir.1996). The question is what can a competitor reasonably infer from the prosecution history, not what did the inventor subjectively intend. *Id.* at 1107–08.

4. I do not mean to deny that as a general matter it is true that a dependent claim cannot be infringed unless the claim on which it

depends has been infringed. *See Jeneric/Pentron, Inc. v. Dillon Co.,* 205 F.3d 1377, 1383 (Fed.Cir.2000).

5. Of course merely claiming a structure is not enough, the claim must recite sufficient structure to perform entirely the claimed function. I assume, in deciding this motion, that claim 10 recites sufficient structure.

6. If a jury did find that this structure constituted a yoke, that would raise a serious question about the validity of claim 10 in the face of such prior art as the Van Straaten patent.

Claim 10 is dependent on claim 2 and therefore includes claim 2's limitation that the means for pivoting must be positioned intermediate the shaft extremities. 35 U.S.C. 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers"). Recalling the construction of "intermediate" set forth above, it is clear that the base—or "yoke"—of the 6 Second Abs is not "intermediate" the shaft extremities because it is impossible for the shaft of the 6 Second Abs to protrude below the base. Accordingly, even assuming a jury could agree with Kor–CT that the 6 Second Abs contains a yoke, no jury could find that the yoke was positioned intermediate the shaft. Claim 10 is, therefore, not literally infringed.[7]

## IV. False Marking

Kor–CT alleges that Savvier violated 35 U.S.C. § 292[8] by using an infomercial to falsely "mark" the 6 Second Abs as patented while it was still unpatented. Savvier does not deny that its infomercial, first aired on September 12, 2003, referred to the 6 Second Abs as having "patented progressive resistance." It also does not deny that it did not receive a United States patent until March of 2004. Nevertheless, Savvier argues that it violated no law because, at the time the infomercial aired, the 6 Second Abs was covered by five foreign patents. To this Kor–CT responds that: (1) 35 U.S.C. § 292 prohibits marking a device as "patented," if it is only

covered by a foreign patent; and (2) even if a foreign patent sufficed to allow marking a device "patented," it does not in this case because the foreign patents in question either did not cover "progressive resistance" or were invalid.

Section 292 does not specify whether an "unpatented article" refers to any article not covered by a United States patent, or only to an article not covered by any patent. The statute, however, is penal in nature and must be strictly construed. *Noma Lites Canada, Ltd. v. Westinghouse Electric Corp.*, 399 F.Supp. 243, 254 (D.D.C.1975). With this principle in mind, this court concludes—as at least one other court has done—that the statute only prohibits the marking of articles that are not subject to either foreign or domestic patent protection. *See Project Strategies Corp. v. National Communications Corp.*, 948 F.Supp. 218, 225–27 (E.D.N.Y.1996) (holding no violation where product marked with "U.S. and foreign patents granted and pending," even though United States patent was pending and only foreign patents had been granted).

There is no evidence to support Kor–CT's claim that Savvier's foreign patents either did not cover the 6 Second Abs or were invalid. Savvier submitted evidence in support of its motion for summary judgment demonstrating that it had, on September 12, 2003, five foreign patents covering the 6 Second Abs. Kor–CT has not presented sufficient evidence to the contrary.[9] As the plaintiff, Kor–CT

---

7. For the same reason given in the discussion of claim 2, regarding the prosecution history of the word "intermediate," claim 10 is also not infringed under the doctrine of equivalents.

8. Section 292 imposes a monetary penalty on "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public."

Any person may sue for the penalty and, if successful, is entitled to one half the fine. 35 U.S.C. § 292(b).

9. The only evidence Kor–CT has presented is evidence tending to show that Ross Mackert, who is not listed as an inventor in Savvier's patent application, worked on the design of the 6 Second Abs. This, according to Kor–CT, establishes that Savvier's patents are invalid. It does not. Even if Mr. Mackert worked on the design of the finished 6 Second Abs prod-

bears the burden of proving Savvier's violation, and summary judgment is appropriate when it fails to offer evidence sufficient to meet that burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[10]

Because it is undisputed that on September 12, 2003 the 6 Second Abs was covered by foreign patents, it was not at that time an "unpatented article" within the meaning of 35 U.S.C. § 292, and Savvier's marking did not violate that statute. Summary judgment in Savvier's favor on Count III is appropriate.

Savvier's motion for summary judgment (doc. # 25) is GRANTED.

It is so ordered.

uct, that evidence, standing alone, is insufficient to allow a jury to conclude that the he was therefore an inventor who needed to be disclosed in Savvier's patent application. A final product may incorporate improvements not disclosed in the patent, and the inventor of those improvements need not be mentioned in the patent. Kor–CT has presented no evidence that Mr. Mackert invented anything *covered by Savvier's United States patent.* Moreover, though failure to disclose an inventor may invalidate a *United States* patent, Kor–CT has not presented any evidence showing that failure to include an inventor would render any, let alone all, of the *foreign* patents invalid.

Kor–CT also argues that Savvier failed to disclose prior art in its United States patent application. This too has no bearing on whether or not the *foreign patents* are invalid, a subject on which Kor–CT has offered no evidence.

10. Even were there evidence supporting the argument that the foreign patents were invalid or not as broad as Kor–CT claims, that alone would not be sufficient. "The applicable test is not whether the product sold by the defendant fails to 'read on' the claim of the patent but whether the defendant had an honest belief that the patent covered the articles marked." *Innovative Concepts in Entertainment, Inc. v. Entertainment Enterprises, Ltd.,* 576 F.Supp. 457, 462 (E.D.N.Y.1983).